IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| NATALIE BLEVINS<br>122 Miami Street, Apartment 4<br>Urbana, Ohio 43078<br><br>Plaintiff,<br><br>v.<br><br>THE ULTRA-MET COMPANY<br>120 Fyffe Street<br>Urbana, Ohio 43078<br><br>**Serve Also:**<br>The Ultra-Met Company<br>c/o Hugh E. Wall III<br>40 North Main Street, Suite 1700<br>Dayton, Ohio 45423<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Natalie Blevins, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES, VENUE, & JURISDICTION**

1. Blevins is a resident of the city of Urbana, Champaign County, Ohio.

2. At all times herein, Blevins was acting in the course and scope of her employment.

3. The Ultra-Met Company (hereinafter, "Ultra-Met") is a domestic corporation that is registered to conduct business in the State of Ohio.

4. Ultra-Met does business at 120 Fyffe Street, Urbana, Champagne County, Ohio 43078.

5. All the material events alleged in this Complaint occurred in Champaign County.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Blevins is alleging Federal Law Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601 *et seq.*

7. This Court has supplemental jurisdiction over Blevins' state law claims pursuant to 28 U.S.C. § 1367 as Blevins' state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Blevins filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-02856 against Ultra-Met ("Blevins EEOC Charge").

10. On or about September 23, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Blevins regarding the Charges of Discrimination brought by Blevins against Ultra-Met in the Blevins EEOC Charge.

11. Blevins received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Blevins has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Blevins has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Blevins is a former employee of Ultra-Met.

15. Ultra-Met employed Blevins as a Finish Grind Operator.

16. On or about May 2, 2011, Blevins started working at Ultra-Met.

17. In or about late 2018, Blevins began experiencing severe back pain while working for Ultra-Met.

18. In or about late 2018, Blevins' physician diagnosed Blevins with a slipped disc and pinched nerve ("Back Injury").

19. In or about late 2018, due to the Back Injury, Blevins began regular appointments for injections to treat the Back Injury ("Treatment").

20. Beginning in or about late 2018, Blevins had Treatment every few months.

21. In or about late 2018, Blevins informed Ultra-Met's Human Resources Department ("HR") about her Back Injury and her Treatment ("Disability Notice").

22. In the Disability Notice, Blevins notified Ultra-Met that she needed intermittent leave for her Treatment.

23. Ultra-Met is a covered employer under the FMLA.

24. As of 2018, Blevins worked for Ultra-Met for at least 12 months.

25. As of 2018, Blevins had at least 1,250 hours of service for Ultra-Met during the previous 12 months.

26. Ultra-Met did not inform Blevins of her right to utilize FMLA leave.

27. The United States Department of Labor imposes notice requirements on employers notifying all workers and applicants of FMLA.

28. Ultra-Met was required to notify Blevins of her eligibility for FMLA leave.

29. Ultra-Met failed to satisfy its requirement to notify Blevins of FMLA leave and her eligibility.

30. At the time of the Disability Notice, Blevins was not aware of her eligibility for FMLA leave at the time.

31. At the time of the Disability Notice, Ultra-Met did not inform Blevins that she was eligible for FMLA leave.

32. Ultra-Met has a progressive disciplinary policy ("Discipline Policy").

33. In the Discipline Policy, Ultra-Met gives employees disciplinary points for attendance or behavioral violations.

34. In the Discipline Policy, Ultra-Met terminates employees if they have three or more disciplinary points.

35. Ultra-Met gave Blevins disciplinary points whenever she missed work for Treatments.

36. Ultra-Met gave Blevins disciplinary points whenever she missed work for Treatments, even though she was eligible for intermittent FMLA leave.

37. Blevins' Back Injury constituted a physical impairment.

38. Blevins' Back Injury substantially impaired one or more of her major life activities, including working.

39. As a result of the Back Injury, Blevins has a record of physical impairment.

40. As a result of suffering from the Back Injury, Blevins is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

41. In the alternative, Defendant perceived Blevins as being disabled.

42. In the alternative, Defendant perceived that Blevins' Back Injury constituted a physical impairment.

43. In the alternative, Defendant perceived Blevins' disability to substantially impair one or more of her major life activities, including working.

44. Despite this actual or perceived disabling condition, Blevins was still able to perform the essential functions of her job.

45. In or about the end of 2018, Blevins' physician said she would need surgery.

46. In or about the end of 2018, Blevins requested six weeks of FMLA leave for her surgery ("First Leave Request").

47. Ultra-Met approved the First Leave Request.

48. In or about late January 2019, Blevins' physician said Blevins needed steroid injections in her back.

49. In or about the summer of 2019, Blevins spoke with Randy Davis ("Conversation with Davis").

50. Davis was Blevins' supervisor.

51. At the time of the Conversation with Davis, Blevins was eligible for a promotion to Group Lead.

52. At the time of the Conversation with Davis, The Group Lead position was available.

53. In the Conversation with Davis, Blevins expressed her interest in the promotion to Davis.

54. In the Conversation with Davis, Blevins requested to be considered for the promotion to Group Lead.

55. At the time of the Conversation with Davis, Blevins had worked at Ultra-Met for over eight years.

56. At the time of the Conversation with Davis, Blevins had no significant history of discipline.

57. Blevins consistently received positive performance reviews.

58. At the time of the Conversation with Davis, Blevins was qualified for the Group Lead position.

59. Despite her actual or perceived disability, Blevins was able to perform all the essential job functions of Group Lead.

60. In or about the summer of 2019, Davis refused to consider Blevins for the Group Lead position ("Failure to Promote").

61. In the Conversation with Davis, Davis told Blevins she had "too many health issues."

62. Ultra-Met committed the Failure to Promote because of Blevins' disability.

63. Ultra-Met committed the Failure to Promote because of Blevins' perceived disability.

64. Ultra-Met committed the Failure to Promote in retaliation for Blevins' use of FMLA leave.

65. Ultra-Met discriminated against Blevins on the basis of her disability.

66. Ultra-Met discriminated against Blevins on the basis of her perceived disability.

67. Ultra-Met retaliated against Blevins for using FMLA leave.

68. Ultra-Met only considered similarly-situated non-disabled employees for the Group Lead position.

69. Ultra-Met promoted an employee to Group Lead with less experience than Blevins.

70. Ultra-Met promoted an employee to Group Lead with less seniority than Blevins.

71. Ultra-Met discriminated against Blevins on the basis of her disability in violation of R.C. § 4112.01 *et seq*.

72. Ultra-Met discriminated against Blevins on the basis of her disability in violation of ADA.

73. The Failure to Promote was an adverse action.

74. The Failure to Promote was an adverse employment action.

75. Ultra-Met intentionally decided not to promote Blevins.

76. Ultra-Met willfully decided not to promote Blevins.

77. In or about October 2019, the symptoms of Blevins' Back Injury significantly worsened.

78. Blevins continued performing her essential job functions despite her worsening Back Injury.

79. On or about November 1, 2019, Blevins' pain became so severe she went to the emergency room ("ER Visit").

80. During the ER Visit, the emergency medicine physician said Blevins could not work for a week due to her worsened Back Injury ("Medical Absence").

81. During the ER Visit, the emergency medicine physician wrote a note stating Blevins could not work through at least November 7, 2019 ("Medical Note").

82. Blevins notified Carlton Gibbs of her ER Visit via phone.

83. Gibbs is an HR Manager at Ultra-Met.

84. Blevins notified Gibbs of her Medical Absence via phone.

85. On or about November 8, 2019, Blevins returned to work from her Medical Absence.

86. On or about November 8, 2019, Blevins presented the Medical Note to Scott Workman.

87. Workman was Blevins' supervisor.

88. Workman said Blevins would need to speak with Carlton Gibbs regarding the Medical Absence.

89. On or about November 9, 2019, Blevins met with Gibbs ("HR Meeting").

90. During the HR Meeting, Blevins explained her health conditions to Gibbs.

91. During the HR Meeting, Blevins provided her Medical Note to Gibbs.

92. During the HR Meeting, Blevins reminded Gibbs of her disability.

93. During the HR Meeting, Blevins requested FMLA leave.

94. During the HR Meeting, Gibbs said he would fax FMLA paperwork to Blevins' physician.

95. Gibbs never faxed the FMLA paperwork to Blevins' physician.

96. Gibbs' failure to fax the FMLA paperwork to Blevins' physician constituted interference with Blevins' right to take qualified FMLA leave.

97. Gibbs intended to interfere with Blevins' right to take qualified FMLA leave.

98. Ultra-Met interfered with Blevins' right to take qualified FMLA leave.

99. While awaiting FMLA leave approval, Blevins continued working her normal shifts.

100. On or about November 9, 2019, a monthly meeting was held ("Company Meeting").

101. The Company Meeting was led by Justin Evans.

102. Evans was Manufacturing Manager for Ultra-Met.

103. The Company Meeting was held to discuss the current state of Ultra-Met.

104. During the Company Meeting, Evans allowed the employees to voice their complaints and discuss them.

105. During the Company Meeting, several employees brought up various complaints they recently had.

106. During the Company Meeting, Blevins began to speak up and share her concerns and complaints, but Evans immediately stopped her.

107. Evans said Blevins could table the concerns and discuss them privately after the meeting.

108. Evans denied Blevins the opportunity to be heard at the Company Meeting.

109. Evans did not deny similarly-situated non-disabled employees the opportunity to voice comments and concerns during the Company Meeting.

110. Blevins was upset that she was denied the same opportunity her co-workers were given during the Company Meeting.

111. Blevins was singled out during the Company Meeting.

112. On or about November 9, 2019, after the Company Meeting, Davis told Blevins that Evans wanted to see her in Evans' office immediately.

113. Evans did not summon similarly-situated employees after the Company Meeting.

114. Blevins told Davis she wanted her Union Representative present when meeting with Evans ("Union Request").

115. Blevins was a member of Union IAM Local 2276.

116. Blevins' Union Representative was Kyle Beverly.

117. Davis informed Evans of Blevins' Union Request.

118. Evans denied Blevins' Union Request.

119. Evans stated Blevins could bring an employee she trusted to the meeting.

120. Blevins affirmed she wanted Beverly present at the meeting with Evans ("Second Union Request").

121. Blevins opposed disability discrimination.

122. Blevins opposed retaliation.

123. After the Second Union Request, Evans told Blevins she had to clock out, leave the building, and could not return to work until the following Monday ("Suspension").

124. The Suspension was a suspension.

125. The Suspension was an adverse action.

126. The Suspension was an adverse employment action.

127. Due to the Suspension, Blevins lost pay for two shifts after requesting the Second Union Request.

128. Blevins did not refuse to attend the meeting with Evans.

129. Blevins had the right to request her Union Representative be present at the meeting with Evans.

130. Ultra-Met gave Blevins the Suspension intentionally.

131. Ultra-Met gave Blevins the Suspension willfully.

9

132. Ultra-Met gave Blevins the Suspension because of her disability.

133. Ultra-Met gave Blevins the Suspension because of her perceived disability.

134. Ultra-Met gave Blevins the Suspension because she opposed discrimination.

135. Ultra-Met gave Blevins the Suspension in retaliation for her use of FMLA leave.

136. On or about November 15, 2019, Gibbs summoned Blevins for a meeting with Gibbs and Rodney Wrocklage ("Termination Meeting").

137. Wrocklage is the Plant Manager at Ultra-Met.

138. On or about November 15, 2019, Ultra-Met terminated Blevins' employment ("Termination").

139. At the Termination Meeting, Gibbs informed Blevins about the Termination.

140. At the Termination Meeting, Gibbs said Blevins was terminated due to her absences ("Termination Excuse").

141. Blevins' only absences were the Medical Absences supported by the Medical Note from the emergency medicine physician.

142. At the Termination Meeting, Gibbs said Blevins was "faking" her Back Injury.

143. The Termination Excuse was pretextual.

144. The Termination Excuse had no basis in fact.

145. The Termination Excuse was not the real reason for the Termination.

146. Ultra-Met terminated Blevins because of her disability.

147. Ultra-Met terminated Blevins because of a perceived disability.

148. Ultra-Met terminated Blevins in retaliation for her use of FMLA leave.

149. Ultra-Met terminated Blevins in order to prevent her from using FMLA leave.

150. As a direct and proximate result of Ultra-Met's conduct, Blevins suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA

151. Blevins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152. Blevins suffers from injuries relating to the Back Injury.

153. The injuries relating to the Back Injury constituted a physical impairment.

154. Blevins' physical impairment substantially impaired one or more of her major life activities including working.

155. Blevins is disabled.

156. In the alternative, Ultra-Met perceived Blevins as being disabled.

157. Alternatively, Ultra-Met perceived Blevins' condition to substantially impair one or more of her major life activities including working.

158. Ultra-Met treated Blevins differently than other similarly-situated employees based on her disabling condition.

159. Alternatively, Ultra-Met treated Blevins differently than other similarly-situated employees based on her perceived disabling condition.

160. Gibbs accused Blevins of "faking" her Back Injury.

161. Ultra-Met terminated Blevins' employment without just cause.

162. Ultra-Met terminated Blevins' employment based on her disability.

163. Alternatively, Ultra-Met terminated Blevins' employment based on her perceived disability.

164. Ultra-Met violated ADA when it discharged Blevins based on her disability.

165. Alternatively, Ultra-Met violated ADA when it discharged Blevins based on her perceived disability.

166. Ultra-Met violated ADA by discriminating against Blevins based on her disabling condition.

167. Alternatively, Ultra-Met violated ADA by discriminating against Blevins based on her perceived disabling condition.

168. Blevins suffered emotional distress as a result of Ultra-Met's conduct, and is entitled emotional distress damages pursuant to ADA.

169. As a direct and proximate result of Ultra-Met's conduct, Blevins suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

170. Blevins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

171. Blevins suffers from injuries relating to the Back Injury.

172. The injuries relating to the Back Injury constituted a physical impairment.

173. Blevins' physical impairment substantially impaired one or more of her major life activities including working.

174. Blevins is disabled.

175. In the alternative, Ultra-Met perceived Blevins as being disabled.

176. Alternatively, Ultra-Met perceived Blevins' condition to substantially impair one or more of her major life activities including working.

177. Ultra-Met treated Blevins differently than other similarly-situated employees based on her disabling condition.

178. Alternatively, Ultra-Met treated Blevins differently than other similarly-situated employees based on her perceived disabling condition.

179. Gibbs accused Blevins of "faking" her Back Injury.

180. Ultra-Met terminated Blevins' employment without just cause.

181. Ultra-Met terminated Blevins' employment based on her disability.

182. Alternatively, Ultra-Met terminated Blevins' employment based on her perceived disability.

183. Ultra-Met violated R.C. § 4112.01 *et seq*. when it discharged Blevins based on her disability.

184. Alternatively, Ultra-Met violated R.C. § 4112.01 *et seq*. when it discharged Blevins based on her perceived disability.

185. Ultra-Met violated R.C. § 4112.01 *et seq*. by discriminating against Blevins based on her disabling condition.

186. Alternatively, Ultra-Met violated R.C. § 4112.01 *et seq*. by discriminating against Blevins based on her perceived disabling condition.

187. Blevins suffered emotional distress as a result of Ultra-Met's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

188. As a direct and proximate result of Ultra-Met's conduct, Blevins suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

189. Blevins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

190. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

191. Ultra-Met is a covered employer under the FMLA.

192. During her employment, Blevins qualified for FMLA leave.

193. Ultra-Met failed to properly advise Blevins of her rights under the FMLA.

194. During the HR Meeting, Blevins requested FMLA leave.

195. During the HR Meeting, Gibbs said he would fax FMLA paperwork to Blevins' physician.

196. Gibbs never faxed the FMLA paperwork to Blevins' physician.

197. Gibbs' failure to fax the FMLA paperwork to Blevins' physician constituted interference with Blevins' right to take qualified FMLA leave.

198. Gibbs intended to interfere with Blevins' right to take qualified FMLA leave.

199. Ultra-Met unlawfully interfered with Blevins' exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

200. Ultra-Met violated the FMLA when they terminated Blevins for requesting to use FMLA leave.

201. Ultra-Met violated the FMLA when they terminated Blevins' employment to preclude her from being able to utilize FMLA leave.

202. As a direct and proximate result of Ultra-Met's conduct, Blevins is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## COUNT IV: RETALIATION IN VIOLATION OF THE FMLA

203. Blevins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

204. During her employment, Blevins asked whether she could utilize FMLA leave.

205. Ultra-Met retaliated against Blevins by terminating her employment after she requested to utilize FMLA leave.

206. Ultra-Met retaliated against Blevins by terminating her employment when she utilized FMLA leave.

207. Ultra-Met willfully retaliated against Blevins in violation of U.S.C. § 2615(a).

208. As a direct and proximate result of Ultra-Met's wrongful conduct, Blevins is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

**DEMAND FOR RELIEF**

WHEREFORE, Blevins demands from Ultra-Met the following:

(a) Issue an order requiring Ultra-Met to restore Blevins to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Ultra-Met of compensatory and monetary damages to compensate Blevins for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Ultra-Met in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Blevins' claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Paul Filippelli*_____
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email:  trisha.breedlove@spitzlawfirm.com
            paul.filippelli@spitzlawfirm.com

*Attorneys for Plaintiff Natalie Blevins*

## JURY DEMAND

Plaintiff Natalie Blevins demands a trial by jury by the maximum number of jurors permitted.

*/s/ Paul Filippelli*_____
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**